Iris RICHARD et al., Plaintiffs,

v.

**BELL ATLANTIC CORP. et al., Defendants.**

Renee Arrington et al., Plaintiffs,

v.

Bell Atlantic Corp. et al., Defendants.

Civ.A. Nos. 96–2168(RMU), 99–2380(RMU).

United States District Court, District of Columbia.

Sept. 14, 2001.

---

Avis E. Buchanan, Washington, DC, John Wadie Hermina, Hermina Law Group, Larel, MD, for plaintiffs.

Vincent Hamilton Cohen, Paul Charles Skelly, William Patrick Flanagan, Harry Thomas Jones, Jr., Hogan & Hartson, L.L.P., Washington, DC, for defendants.

Solaman Geoffrey Lippman, Lippman & Semsker, P.L.L.C., Washington, DC, for R. Meshelle Van Allen.

## MEMORANDUM OPINION

URBINA, District Judge.

GRANTING THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS OF PLAINTIFF CAROLYN GREEN

### I. INTRODUCTION

These race-discrimination and retaliation cases began with 132 current and former employees of Bell Atlantic Corp. (now Verizon) suing their employer and its subsidiaries (collectively, "the defendants" or "Bell Atlantic") under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and 42 U.S.C. § 1981. Although the court has not consolidated these two cases, they have been mediated together and briefed together because of the similarity in claims, counsel, and parties.[1] Through the diligence and persistence of the parties, the lawyers, and alternative dispute resolution, only three plaintiffs remain in the case.

The defendants have filed motions for summary judgment against all three remaining plaintiffs. In this case, the defendants move for summary judgment on all claims of Carolyn Green ("the plaintiff" or "Ms. Green"). For the reasons that follow, the court will grant the defendants' motion for summary judgment.

### II. BACKGROUND

Carolyn Green has worked for Bell Atlantic–Maryland, Inc. ("Bell Atlantic") from October 26, 1977 until the present. *See* Mot. for Summ.J. at 3. She began as a directory assistance operator, received a promotion to customer service representative in 1979, and remained in that position until 1986, when she received a promotion to Frame Attendant. *See id.* On Febru-

ary 25, 1990, Ms. Green received a promotion to Central Office Technician ("COT"), and on June 29, 1997, she received a promotion to Engineering Assistant. *See id.* On December 1, 1999, the company promoted her to management (Specialist), where she currently remains. *See id.*

In April 1991, the company assigned Ms. Green, then a COT, to the Voice Mail crew, which maintains and monitors the company's voice-mail system. *See* Mot. for Summ.J. at 3. In February 1996, Bell Atlantic manager Peter Bogdan made the decision to reassign Ms. Green from the Voice Mail crew to the Electronic Switching Team ("5ESS team"). *See id.* at 4. The parties offer different reasons from Mr. Bogdan's decision. The plaintiff charges that "unlike similarly situated white associates in Ms. Green's workgroup, she was not asked whether or not she would voluntarily accept reassignment to the electronic switching system team...." *See* Pl.'s Statement of Material Facts As to Which There Are Genuine Disputes ("Pl.'s Statement") at 1.

The defendants counter that one technician needed to be reassigned because there was a sufficient amount of work to keep all the voice-mail technicians busy while the 5ESS team needed more workers to meet its demands. *See* Mot. for Summ.J. at 4. Bell Atlantic explains that when reassigning associates, Mr. Bogdan normally investigates whether one employee has job knowledge "that would make that associate a logical choice for reassignment." *See id.* If no employee fits this description, Mr. Bogdan asks for volunteers. *See id.* If no employee volunteers, he then selects the crew member with the

---

1. In the *Richard v. Bell Atlantic Corp.* case, Dkt. No. 96cv2168, there were originally 127 plaintiffs. In the *Arrington v. Bell Atlantic Corp.* case, Dkt. No. 99cv2380, there were originally 21 plaintiffs, all but five of whom were also plaintiffs in the Richard case. Thus, there were initially 132 total plaintiffs.

least seniority at Bell Atlantic. *See id.* In this case, the company states that no technician had specialized job knowledge, nobody volunteered for the reassignment, and Mr. Bogdan simply selected Ms. Green because she had the least tenure at Bell Atlantic. *See id.* at 4–5. The company says "Green's reassignment did not affect her title, pay or benefits." *Id.* at 5.

Ms. Green makes a number of allegations against Bell Atlantic. First, she claims she was segregated from her white co-workers, and excluded from company parties, anniversaries of co-workers, and recognition breakfasts. *See* Pl.'s Statement at 2. Second, Ms. Green claims she requested but was denied on-the-job training. *See id.* Third, she alleges that the company retaliated against her when Mr. Bogdan involuntarily transferred her to the 5ESS team. *See id.* Fourth, Ms. Green claims the company denied her equal access to the tools and facilities associated with her job, such as a personal computer and, in some instances, a desk phone. She also states she was not given a key to the "quiet room" at her work location. *See id.* at 3. Fifth, she asserts that the company denied her both regular and emergency overtime that was given to similarly situated white employees. *See* Pl.'s Statement at 4. Sixth, Ms. Green claims that Bell Atlantic falsely evaluated her by rating her as an employee who only "meets some" requirements in several categories in her 1995 year-end performance appraisal. *See id.* Seventh, she claims she applied for more than 200 positions but was unfairly denied promotions. *See id.* at 5. Lastly, she alleges that the combination of many of these things subjected her to a hostile work environment. *See* Pl.'s Opp'n to Defs.' Mot. for Summ.J. ("Pl.'s Opp'n") at 8.

The defendant denies all the allegations. In terms of Ms. Green's attempts to obtain a promotion, the company states that before it eliminated the Business Management Abilities Test ("BMAT") in May 1998, Ms. Green had taken the test several times and never earned a qualifying score. *See* Mot. for Summ.J. at 5. The company notes that it promoted Ms. Green to the management position of Specialist on December 1, 1999. *See id.* The company also points out that of the "103 positions which Green sought that were filled by someone other than Green, 27% of the placements were African–American." *See id.*

The defendants now move for summary judgment on all the claims of Ms. Green.

## III. ANALYSIS

### A. Legal Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood,* 43 F.3d 1538, 1540 (D.C.Cir.1995). To determine what facts are "material," a court must look to the substantive law on which each claim rests. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence

as true. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *See id.* at 252, 106 S.Ct. 2505. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *See id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *See Greene v. Dalton,* 164 F.3d 671, 674 (D.C.Cir.1999). Rather, the nonmoving party "must come forward with specific facts" that would enable a reasonable jury to find in its favor. *See id.* at 675, 164 F.3d 671. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-50, 106 S.Ct. 2505 (citations omitted). Finally, the D.C. Circuit has directed that because it is difficult for a plaintiff to establish proof of discrimination, the court should view summary-judgment motions in such cases with special caution. *See Aka v. Washington Hosp. Ctr.,* 116 F.3d 876, 879 (D.C.Cir.1997); *see also Johnson v. Digital Equip. Corp.,* 836 F.Supp. 14, 18 (D.D.C. 1993).

## B. The *McDonnell Douglas* Framework

To prevail on a claim of race discrimination or retaliation under Title VII, a plaintiff must follow a three-part burden-shifting analysis. *See McDonnell Douglas v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The Supreme Court explained this scheme as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination. Second, if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.... The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252-53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (quoting *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817 (citations omitted)).

Thus, the plaintiff must first establish a prima-facie case of prohibited discrimination or retaliation. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Aka v. Washington Hosp. Ctr.,* 156 F.3d 1284, 1288 (D.C.Cir.1998) (*en banc*); *see also Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 2105, 147 L.Ed.2d 105 (2000). As a general matter, a prima-facie case of discriminatory denial of promotion based on race consists of the following elements: (1) the plaintiff is a member of a protected class; (2) the plaintiff applied for and was qualified for the position at issue; (3) despite the plaintiff's qualifications, the defendant rejected the plaintiff; and (4) the position was filled by a similarly qualified employee from outside the protected class. *See McDonnell Douglas,* 411 U.S. at 802, 93

S.Ct. 1817; *Bundy v. Jackson,* 641 F.2d 934, 951 (D.C.Cir.1981). To demonstrate a prima-facie case of retaliation, the plaintiff must establish that: (1) the plaintiff was engaged in a protected activity; (2) the employer took an adverse personnel action against her; and (3) there is a causal link between the adverse action and the protected activity. *See Jones v. Washington Metro. Area Transit Authority,* 205 F.3d 428, 433 (D.C.Cir.2000).

If the plaintiff succeeds in making a prima-facie case, the burden shifts to the employer to articulate a non-discriminatory reason for its action. The employer's burden, however, is merely one of production. *See Burdine,* 450 U.S. at 254–55, 101 S.Ct. 1089. The employer "need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* If the employer is successful, the burden shifts back to the plaintiff to show that the defendant's proffered reasons are pretextual and that unlawful discrimination was the real reason for the action. *See McDonnell Douglas,* 411 U.S. at 802–05, 93 S.Ct. 1817; *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 508, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

The defendant's explanation of its legitimate reasons must be "clear and reasonably specific" so that the plaintiff is "afforded a full and fair opportunity to demonstrate pretext." *See Burdine,* 450 U.S. at 258, 101 S.Ct. 1089 (citation omitted). A subjective reason can be legally sufficient, legitimate, and nondiscriminatory if the defendant articulates a clear and reasonably specific factual basis on which it based its subjective opinion. *See id.* As the Eleventh Circuit has explained:

[I]t might not be sufficient for a defendant employer to say it did not hire the plaintiff applicant simply because "I did not like his appearance" with no further explanation. However, if the defendant employer said, "I did not like his appearance because his hair was uncombed and he had dandruff all over his shoulders," or ... "because he came to the interview wearing short pants and a T-shirt," the defendant would have articulated a "clear and reasonably specific" basis for its subjective opinion—the applicant's bad (in the employer's view) appearance. That subjective reason would therefore be a legally sufficient, legitimate, nondiscriminatory reason for not hiring the plaintiff applicant.

*Chapman v. AI Transport,* 229 F.3d 1012, 1034 (11th Cir.2000) (*en banc*).

Once the defendant carries its burden of articulating a "legitimate, nondiscriminatory reason" for the employee's rejection, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but rather were a pretext for discrimination. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. "That is, the plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence'" and that the plaintiff's membership in a protected class was the true reason for the employment action. *See Reeves,* 120 S.Ct. at 2106 (quoting *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089); *see also Aka,* 156 F.3d at 1290; *Mungin v. Katten Muchin & Zavis,* 116 F.3d 1549, 1554 (D.C.Cir.1997).

Both the Supreme Court and the D.C. Circuit have held that the burden-shifting scheme becomes irrelevant once both parties have met the burdens discussed above. *See Reeves,* 120 S.Ct. at 2106; *Aka,* 156

F.3d at 1289. At that point, the relevant inquiry is whether there is sufficient evidence from which a reasonable trier of fact could find in favor of the plaintiff, although "the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom ... on the issue of whether the defendant's explanation is pretextual." *See Reeves*, 120 S.Ct. at 2106 (citing *Burdine*, 450 U.S at 255 n. 10, 101 S.Ct. 1089); *see also Aka*, 156 F.3d at 1290; *Mungin*, 116 F.3d at 1554. In *Aka*, the D.C. Circuit found that the plaintiff had presented no evidence directly suggesting discrimination, but instead presented evidence that the defendant's proffered justification was false. The *Aka* court ruled that simply casting doubt on the employer's proffered justification did not automatically enable the plaintiff to survive summary judgment. *See Aka*, 156 F.3d at 1290–91. Rather, "the plaintiff's attack on the employer's explanation must always be assessed in light of the total circumstances of the case." *Id.* at 1291.

In sum, once an employer has met its burden of advancing a nondiscriminatory reason for its actions, the focus of proceedings at summary judgment:

> will be on whether the jury could infer discrimination from the combination of (1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer) or any contrary evidence that may be available to the employer

(such as evidence of a strong track record in equal opportunity employment). *See Aka*, 156 F.3d at 1289.

In *Reeves*, the Supreme Court reaffirmed the principles set forth in *Aka*. Mandating a case-by-case approach, the Supreme Court instructed the district courts to examine a number of factors, including "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports [or undermines] the employer's case." *Reeves*, 120 S.Ct. at 2109; *see also Aka*, 156 F.3d at 1289.

Lastly, the D.C. Circuit has recognized that courts "may not 'second-guess' an employer's personnel decision absent demonstrably discriminatory motive." *Fischbach v. D.C. Dep't of Corrections*, 86 F.3d 1180, 1183 (D.C.Cir.1996) (citing *Milton v. Weinberger*, 696 F.2d 94, 100 (D.C.Cir.1982)); *see Marshall v. Federal Express Corp.*, 130 F.3d 1095, 1100 (D.C.Cir.1997); *Mungin*, 116 F.3d at 1556 (quoting *Fischbach*, 86 F.3d at 1183). "It is not enough ... to disbelieve the employer; the fact finder must believe the plaintiff's explanation of intentional discrimination." *Reeves*, 120 S.Ct. at 2108 (citing *St. Mary's Honor Ctr.*, 509 U.S. at 519, 113 S.Ct. 2742).

## C. The Plaintiff's Claims

The plaintiff makes three principal allegations against the defendants: (1) that the plaintiff suffered from disparate treatment on the basis of her race; (2) that the defendants subjected the plaintiff to a hostile work environment; and (3) that the defendants retaliated against the plaintiff upon learning of her protected activities.[2]

---

2. In the complaint, the plaintiff also alleges defamation and invasion of privacy against the defendants. Once the defendants moved for summary judgment on these counts, however, the plaintiff did not include any argument on these points in her opposition. Accordingly, finding good cause to do so, the court will treat the defendants' arguments on these counts as conceded by the plaintiff, as per Local Civil Rule 7.1(b). Thus, the court

Applying the above legal standards to the instant case, the court will grant the defendant's motion for summary judgment on all three counts.

## 1. Disparate Treatment

■ Citing Title VII and 42 U.S.C. § 1981, the plaintiff alleges that the defendants denied her promotions, denied her regular and emergency overtime and denied her on-the-job training on the basis of her race. *See* Pl.'s Opp'n at 3–8. In terms of the emergency-overtime issue, the defendants argue that the plaintiff cannot establish a prima-facie case on this claim because she fails to show that similarly situated white technicians received overtime that she requested. *See* Mot. for Summ.J. at 14. The defendants note—and the plaintiff never contests—that the company gave the plaintiff a comparable amount of emergency overtime as Charles Kelly, a white employee who was the other COT at the Pikesville facility. *See id.* at 14–15. The court agrees with the defendants that the plaintiff fails to establish a prima-facie case. Moreover, even assuming *arguendo* that she could pass her initial hurdle, the defendants note—and, once again, the plaintiff never contests—that she never asked her supervisor, Mr. Housley, for more emergency call-out overtime. *See id.* Thus, the defendants meet their burden of offering a legitimate, nondiscriminatory reason for not providing the plaintiff with additional emergency overtime. The plaintiff, in turn, falls well short of presenting sufficient evidence for a reasonable jury to infer discrimination.

■ The plaintiff's regular-overtime claim also may not proceed. Even assuming *arguendo* that the plaintiff could present a prima-facie case of discriminatory treatment, the defendants successfully meet their burden of offering a legitimate, nondiscriminatory reason for the disparity in regular overtime hours between Ms. Green and Mr. Kelly by noting that regular overtime "is normally assigned to the Technician involved in the 'trouble.'" *See* Mot. for Summ.J. at 15. The defendants state that Mr. Kelly worked more hours of regular overtime than the plaintiff in 1995 because he handled more "troubles" than the plaintiff, which "is not surprising, given that Kelly had been a technician for almost 20 years longer than Green." *See id.* The plaintiff fails entirely to counter this contention. Accordingly, the court will not allow the plaintiff's regular-overtime claim to survive summary judgment.

■ Next, the plaintiff claims the defendants discriminated against her by denying her additional on-the-job training. *See* Pl.'s Opp'n at 7. Specifically, she claims that in February 1993, her supervisor informed her that based on her 1992 year-end appraisal, she needed additional technical training. *See id.* The defendants properly counter by observing that the plaintiff fails to make out a prima-facie discriminatory denial-of-training claim because she does not identify any similarly situated white employees whom the company treated more favorably with regard to training. *See* Mot. for Summ.J. at 15. Indeed, the plaintiff never does identify any such employee in her opposition. *See* Pl.'s Opp'n at 7. The court agrees with the defendants on this point.

■ The plaintiff's final claim of discriminatory treatment centers on the fact that Bell Atlantic denied her promotions "ostensibly" because she did not pass the BMAT, while the company hired white

grants the defendants' motion for summary judgment on the defamation and invasion-of-

privacy claims.

people as supervisors without making them take this test. *See* Pl.'s Opp'n at 7. In support of her argument, the plaintiff identifies one white person, Holli Lloyd, whom the company hired "into a first level management position in January of 1997 without requiring that individual to take the BMAT." *See* Pl.'s Opp'n at 8. Conceding that Ms. Lloyd did not take the BMAT, the defendants explain that Ms. Lloyd was hired into a management position from outside Bell Atlantic and that she went through the Experience Specialist Interview process, an alternative to the BMAT and other testing requirements. *See* Reply at 5 n. 14.

Because Ms. Lloyd was hired from outside the company, the court holds that she and the plaintiff were not similarly situated. The plaintiff fails, therefore, to establish a prima-facie case of discriminatory denial of promotion. Furthermore, even if the plaintiff had met her initial burden, because Ms. Lloyd had to satisfy an alternative qualifying route to be hired, the defendants would meet their burden of offering a legitimate, nondiscriminatory reason for why Ms. Lloyd never had to take the BMAT test. Once again, the plaintiff would have failed to offer sufficient evidence for the court to allow this claim to go before a jury. *See Aka,* 156 F.3d at 1289.

### 2. Hostile Work Environment

The plaintiff alleges that the defendants created a hostile work environment in violation of Title VII. Specifically, the plaintiff charges that she was:

> falsely evaluated, excluded from company sponsored outings and celebrations, segregated, falsely accused of lacking motivation, denied a personal computer, not allocated a key to the voice mail quiet room, referred to as the "N" word, denied on-the-job training, involuntarily transferred and denied numerous pro-

motions that were doled out to less qualified Caucasians and African–Americans who did not complain of discrimination. *See* Pl.'s Opp'n at 9 (internal footnotes omitted).

### a. Legal Standard for a Hostile Work Environment Violation under Title VII

Title VII prohibits an employer from creating or condoning a discriminatorily hostile or abusive work environment. *See Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Title VII makes it unlawful for an employer to "discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or nation of origin." 42 U.S.C. § 2000e–2(a)(1). The Supreme Court has made it clear that the language "terms, conditions, or privileges" is not limited to economic or tangible discrimination and may include psychological harm. *See Meritor,* 477 U.S. at 64, 106 S.Ct. 2399. In addition, the Court has held that "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (quotation omitted). On the other hand, conduct that does not create a hostile or abusive environment is beyond the purview of Title VII. *See id.* at 21, 114 S.Ct. 367.

To establish a claim of a hostile work environment based on racial discrimination, a plaintiff must demonstrate "(1) that he or she suffered intentional discrimination because of race; (2) the discrimination was pervasive and regular; (3) the

discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) the existence of *respondeat superior* liability." *Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1081 (3d Cir.1996).

The Supreme Court has held that a finding of a hostile work environment depends on the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 787–88, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Harris,* 510 U.S. at 23, 114 S.Ct. 367. Moreover, the harassment need not be racial in content to create a racially hostile work environment. *See Bowdre v. Richardson,* 131 F.Supp.2d 179, 187 (D.D.C.2001) (Urbina, J.). Rather, it must be shown that "had the plaintiff [not been part of the protected class,] she would not have been treated in the same manner." *Aman,* 85 F.3d at 1083. The Supreme Court circumscribed the definition of a hostile work environment so that "[t]hese standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher,* 524 U.S. at 788, 118 S.Ct. 2275 (citations omitted).

### b. The Plaintiff Fails to Demonstrate a Hostile Work Environment

■ In this case, the plaintiff has failed to present sufficient evidence of a hostile work environment to survive summary judgment. First, the court has already held that the defendants did not unlawfully deny the plaintiff either on-the-job training or promotions. *See* Section III.C.1. *supra.* Second, the court now rules that the defendants offer a legitimate, nondiscriminatory explanation—which the plaintiff never counters—for how Mr. Bogdan, the plain-

tiff's supervisor, made the decision to transfer the plaintiff to the 5ESS team, albeit in spite of her wishes. Simply put, Mr. Bogdan looked to see if any employee had specific qualifications for the new role, and realizing that nobody did, he asked for volunteers. When nobody volunteered, he chose the employee of the voice-mail crew with the least tenure: in this case, the plaintiff.

Based on the plaintiff's other allegations of a hostile work environment, the court concludes that the plaintiff's claim does not succeed. Viewing the totality of the circumstances, *see Faragher,* 524 U.S. at 787–88, 118 S.Ct. 2275, including the fact that the company has promoted the plaintiff five times since she began working for Bell Atlantic (including twice after she became a plaintiff in this case, which includes her most recent promotion to a management position in 1999), the court is not convinced that the plaintiff had to endure "severe or pervasive" racially based harassment that amounted to a hostile work environment. *See Barbour,* 181 F.3d at 1347–48; *see also Bowdre,* 131 F.Supp.2d at 188. Thus, the court grants the defendants' motion for summary judgment on the plaintiff's hostile work environment claim.

One other point warrants mention. In this case, the plaintiff relies solely on her own allegations in pressing her hostile work environment claim. Although she cites to the depositions of other witnesses, the portions of these depositions that she relies on do not support her position in any meaningful way. *See* Pl.'s Opp'n at 9 & n. 1–12. The court cautions that its holding on this point should be read narrowly because, in some cases, the plaintiff's allegations alone *will* be enough to allow a hostile work environment claim to proceed to a jury. In this case, however, the plaintiff's allegations are not sufficient.

**44**

### 3. Retaliation

■ Lastly, the plaintiff alleges that the defendants retaliated against her by transferring her involuntarily and by denying her promotions. Since the court has already held that the defendants did not unlawfully deny the plaintiff promotions, the court focuses the retaliation inquiry on the plaintiff's claim of an involuntary transfer to the 5ESS team.

As previously noted, to demonstrate a prima-facie case of retaliation, the plaintiff must establish that: (1) the plaintiff was engaged in a protected activity; (2) the employer took an adverse personnel action against her; and (3) there is a causal link between the adverse action and the protected activity. *See Jones*, 205 F.3d at 433. In this case, the key inquiry hinges on whether the defendants' involuntary transfer of the plaintiff constituted an adverse personnel action.

The D.C. Circuit recently laid out the standard for determining whether an involuntary reassignment can form the basis of a Title VII claim. *See Brown v. Brody*, 199 F.3d 446 (D.C.Cir.1999). In *Brown*, the D.C. Circuit held that:

> [A] plaintiff who is made to undertake or who is denied a lateral transfer—that is, one in which she suffers no diminution in pay or benefits—does not suffer an actionable injury unless there are some other materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm.

*Id.* at 457. In their motion for summary judgment, the defendants interpret *Brown* to mean that "[r]outine lateral transfers—whether voluntary or involuntary—are as a matter of law not adverse employment actions." *See* Mot. for Summ.J. at 13.

The court deems this an overstatement of the D.C. Circuit's holding. Indeed, in applying *Brown's* line of reasoning, this court recently held that "even if the defendant labels a reassignment as 'lateral,' if the plaintiff can show objectively tangible harm, the transfer may be deemed an adverse personnel action." *See Sanders v. Veneman*, 131 F.Supp.2d 225, 229–30 (D.D.C.2001) (Urbina, J.) (holding that the plaintiff's transfer to a regional office could be deemed an adverse action if it meant a loss of per diem compensation and diminished opportunities for a promotion). Even more recently, the D.C. Circuit reinforced the scope of its *Brown* decision in admonishing a district court that it had "read our decision in *Brown* too broadly.... [I]t is not enough to ask whether the transfer was purely lateral. We must also ask if other changes in terms, conditions, or privileges followed from the transfer." *See Freedman v. MCI*, 255 F.3d 840, 844 (D.C.Cir.2001).

Unlike the plaintiff in *Sanders*, who articulated the objectively tangible harm he had suffered from his involuntary transfer to another office, this plaintiff completely fails to make the necessary allegations to show that her transfer constituted an adverse personnel action. *Cf. Sanders*, 131 F.Supp.2d at 229. Nowhere does the plaintiff argue that she will lose per diem compensation, that her chances of promotion will be diminished, or that she will suffer any other "objectively tangible harm." *See Brown*, 199 F.3d at 457. Because the plaintiff fails to show that the involuntary transfer constituted an adverse personnel action, she cannot establish a prima-facie case of retaliation. Accordingly, the court grants the defendants motion for summary judgment on this count.

### IV. CONCLUSION

For all these reasons, the court grants the defendants' motion for summary judg-

ment on all claims of Carolyn Green. An order directing the parties in a fashion consistent with this Memorandum Opinion is separately and contemporaneously issued this ⸻ day of September, 2001.