**William SANDERS, Plaintiff,**

v.

**Ann VENEMAN, Secretary, U.S. Department of Agriculture, Defendant.**

**No. CIV.A.00–1419(RMU).**

United States District Court, District of Columbia.

Feb. 22, 2001.

Gary Thomas Brown, Brown & Simmons, L.L.P., Washington, DC, for Plaintiff.

Meredith Manning, Asst. U.S. Atty., Washington, DC, for Defendant.

## MEMORANDUM OPINION

### Denying The Defendant's Motion To Dismiss; Denying Without Prejudice The Defendant's Motion For Summary Judgment

URBINA, District Judge.

## I. INTRODUCTION

This matter comes before the court on the defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). The defendant alternatively moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. The plaintiff, William Sanders ("the plaintiff" or "Mr. Sanders"), brings this suit for damages under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* The plaintiff claims that his employer, the U.S. Department of Agriculture, discriminated against him on the basis of his race and retaliated against him after he complained of unlawful discrimination. Specifically, the plaintiff alleges that his employer denied him promotions and reassigned him to a regional office, negatively affecting his career opportunities. *See* Compl. ¶¶ 6–8. The defendant, Ann Veneman, is the Secretary of Agriculture ("the defendant"), named in her official capacity.

The defendant moves to dismiss this action under Rule 12(b)(1) on the ground that the court lacks subject-matter jurisdiction because the plaintiff failed to timely exhaust his administrative remedies. *See* Mot. to Dis. at 1. The plaintiff counters that he sought EEO counseling two days after realizing that his employer had been discriminating against him. *See* Pl.'s Opp'n to Mot. to Dis. ("Pl.'s Opp'n") at 15. The defendant also moves to dismiss this action under Rule 12(b)(6) on the ground that a lateral transfer is not an adverse personnel action within the meaning of Title VII. *See* Mot. to Dis. at 1.

For the reasons that follow, the court holds that because the plaintiff contacted an EEO counselor within 45 days of his involuntary transfer, he has timely exhausted his administrative remedies. The court holds that the involuntary transfer and the surrounding circumstances in this case may constitute an adverse personnel action within the meaning of Title VII. Moreover, the court finds the plaintiff has established prima-facie cases of discrimination and retaliation.

Accordingly, the court will deny the defendant's motion to dismiss.

## II. BACKGROUND

William Sanders, an African–American man, works as a GS–13 Criminal Investigator in the Office of Inspector General

("OIG"), a division of the U.S. Department of Agriculture ("USDA"). *See* Compl. ¶ 5. Between November 1995 and March 1996, Mr. Sanders applied for four GS–14 Criminal Investigator vacancies within the OIG. He made the "best qualified" list for each promotion but did not receive any of them. *See* Mot. to Dis. at 2. Instead, the defendant chose two white men, one African–American man, and one Hispanic man. *See id.* The defendant announced the selection of one of the white men and the African–American man on January 16, 1996, and announced the other two selections on March 25, 1996. *See id.*

On May 26, 1996, the defendant notified Mr. Sanders that he would be reassigned from the Washington, D.C. office to another GS–13 Criminal Investigator position in Riverdale, Maryland. Mr. Sanders viewed this involuntary transfer to an office outside of headquarters as a negative career move that would decrease his chances of receiving a promotion. *See* Compl. ¶ 8. Moreover, he claims that he "also suffered financial harm as a result of the transfer in that his per diem pay was significantly reduced, which noticeably diminished his salary." Pl.'s Opp'n at 4–5. Accordingly, on May 28, 1996, two days after he learned of his transfer, Mr. Sanders contacted an EEO counselor. *See* Pl.'s Opp'n at 5.

Mr. Sanders asserts that Craig Beauchamp, the Assistant Inspector General, was both the selecting official for the four promotions and the official who authorized Mr. Sanders's transfer to the regional office. *See* Pl.'s Opp'n at 3–4. Mr. Sanders claims Mr. Beauchamp was aware of his involvement in a "coalition to address problems that confronted African–Americans" within the OIG. *See id.* at 3. While Mr. Sanders was pursuing a promotion, Mr. Beauchamp allegedly assured him he would be promoted to a GS–14 position in the Washington office when the position became vacant. *See id.* at 3–4. Mr. Sanders claims that this assurance prevented him from recognizing a pattern of discrimination in the promotion decisions. He re-

alized he was being discriminated against only when he received notice of his reassignment on May 26, 1996. *See id.*

The defendant counters that the promotions were neither discriminatory nor retaliatory, and notes that an African–American man was chosen for one of the positions. *See* Def.'s Reply to Pl.'s Opp'n ("Reply") at 9. In addition, the defendant argues that any alleged conversations with Mr. Beauchamp "would simply not rise to the level of 'misrepresentations' by the agency." *See id.* at 5. The defendant contends that Mr. Sanders suffered no diminution in salary or benefits as a result of his transfer. In addition, the defendant states that a decrease in per diem expense pay does not qualify as a legitimate salary diminution. *See id.* at 10–11. Moreover, the defendant asserts that each of the GS–14 selectees had worked in a regional or field office before their promotions, thus belying Mr. Sanders's claim that his transfer negatively affected his chances for promotion. *See id.* Finally, because the possibility of relocation was one of the conditions of Mr. Sanders's position, the defendant argues that Mr. Sanders cannot consider his reassignment involuntary. *See* Mot. to Dis. at 2–3.

Mr. Sanders visited an EEO counselor for the first time on May 18, 1996. *See* Mot. to Dis. at 3; Pl.'s Opp'n at 5. On July 20, 1999, the EEOC issued a decision finding that Mr. Sanders had satisfied the necessary procedural requirements for an administrative hearing. *See* Pl.'s Opp'n at 6. The EEOC issued its Final Agency Decision on March 17, 2000, holding that Mr. Sanders had satisfied all of the procedural prerequisites for a hearing. *See id.* at 6. The EEOC also determined that Mr. Sanders's transfer and non-selections for the promotion were based on legitimate, non-discriminatory reasons. *See* Mot. to Dis. at 3.

The USDA adopted and incorporated the EEOC's decision on March 17, 2000. *See* Pl.'s Opp'n at 6. Mr. Sanders brought suit in this court on June 15, 2000, within

90 days of the EEOC's final decision, as required by 42 U.S.C. § 2000e–16(c) and 29 C.F.R. § 1614.408. The defendant now moves to dismiss. For the reasons that follow, the court will deny the defendant's motion to dismiss.

## III. ANALYSIS

### A. Legal Standard

■ In reviewing a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the court must accept all of the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See, e.g., Pitney Bowes v. United States Postal Serv.*, 27 F.Supp.2d 15, 19 (D.D.C.1998) (Urbina, J.). On a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of persuasion to establish subject-matter jurisdiction by a preponderance of the evidence. *See Darden v. United States*, 18 Cl.Ct. 855, 859 (Fed.Cl.1989). While the court must accept all well-pled allegations of fact, allegations that are overbroad and unsupported by specific factual averments are insufficient to state a claim upon which relief can be granted. *See DeVoren Stores, Inc. v. Philadelphia*, 1990 WL 10003, \*1 (E.D.Pa.1990); *Crowder v. Jackson*, 527 F.Supp. 1004, 1006 (W.D.Pa.1981).

For a complaint to survive a Rule 12(b)(6) motion to dismiss, it need only provide a short and plain statement of the claim and the grounds on which it rests. See FED. R. CIV. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A motion to dismiss under Rule 12(b)(6) tests not whether the plaintiff will prevail on the merits, but instead whether the plaintiff has properly stated a claim. *See* FED. R. CIV. P. 12(b)(6); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled o.g. by Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Thus, the court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Atchinson v. D.C.*, 73 F.3d 418, 422 (D.C.Cir.1996). In deciding such a motion, the court must accept as true all well-pleaded allegations of fact, excluding those that are overbroad and unsupported by specific factual averments. *See Pitney Bowes*, 27 F.Supp.2d at 19. Moreover, the court should draw all reasonable inferences in the nonmovant's favor. *See Judicial Watch, Inc. v. Clinton*, 880 F.Supp. 1, 7 (D.D.C.1995).

### B. Timely Exhaustion of Administrative Remedies

■ A party must timely file all applicable administrative complaints and appeals to bring a claim in federal court. *See Bowden v. United States*, 106 F.3d 433, 437 (D.C.Cir.1997). Under 29 C.F.R. § 1614.105(a)(1), the aggrieved party must initiate contact with an EEO counselor within 45 days of the date of the alleged discriminatory matter. But, "[b]ecause untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it." *See Bowden*, 106 F.3d at 437.

In this case, the defendant claims the plaintiff did not file within 45 days of the allegedly discriminatory promotions. The plaintiff learned he did not receive the first two promotions on January 16, 1996, and he learned of his non-selection for the other two positions on March 25, 1996. *See* Mot to Dis. at 4. Because one of the selectees for the first two promotions was African–American, "Mr. Sanders might argue that he did not 'recognize' that he was the subject of alleged discrimination on January 16th." *See* Reply at 4. The defendant contends, however, that Mr. Sanders should have contacted an EEO counselor within 45 days of March 25, 1996. *See id.*

The defendant also argues that Mr. Sanders's contact with an EEO counselor

two days after his transfer does not establish subject-matter jurisdiction. *See* Mot. to Dis. at 3. Because it views the reassignment as a non-discriminatory action, the defendant argues that the plaintiff did not timely exhaust his administrative remedies. *See id.*

■ The court, however, determines that the defendant's claim that the reassignment was non-discriminatory is premature. While the defendant correctly cites *Brown v. Brody*, 199 F.3d 446 (D.C.Cir. 1999) for the proposition that an equivalent reassignment is not an adverse personnel action, Mr. Sanders need not establish the discriminatory nature of his transfer at this preliminary stage. In *Brown*, the D.C. Circuit emphasized that "a purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action." *Id.* at 456 (quoting *Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir.1997)). In this case, however, Mr. Sanders does allege that he suffered a decrease in salary and other negative aftershocks as a result of the transfer. *See* Pl.'s Opp'n at 4–5. Although Mr. Sanders must eventually show that the transfer constituted an adverse action, the court need only consider all well-pleaded allegations of fact in a motion to dismiss on 12(b)(1) grounds. Thus, for the purposes of this motion, the court accepts as true the plaintiff's claim that the transfer constituted a discriminatory act. It is undisputed that the plaintiff sought EEO counseling two days after his reassignment. Consequently, because the court holds that the reassignment in this case may be deemed an adverse personnel action, the plaintiff has timely exhausted his administrative remedies.

## C. Reassignment and the Meaning of "Adverse Action" under Title VII

The defendant correctly cites *Brown v. Brody* as the standard for determining whether an involuntary reassignment can form the basis of a Title VII claim. In *Brown*, the D.C. Circuit held that:

> [A] plaintiff who is made to undertake or who is denied a lateral transfer—that is, one in which she suffers no diminution in pay or benefits—does not suffer an actionable injury unless there are some other materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm.

*Id.* at 457. This objective test requires a case-by-case analysis to determine the existence of alleged adverse consequences from a lateral transfer. In the case at bar, the plaintiff alleges that his per diem pay dropped significantly as a result of the transfer. *See* Pl.'s Opp'n at 4. If per diem pay is found to be within the realm of "pay and benefits," the plaintiff will have established a Title VII claim not subject to the limitation of *Brown*, which applies only to purely lateral transfers for which there is no diminution in pay or benefits. *See Brown*, 199 F.3d at 457.

■ Following *Brown*'s line of reasoning, this court holds that even if a defendant labels a reassignment as "lateral," if the plaintiff can show objectively tangible harm, the transfer may be deemed an adverse personnel action. Here, the plaintiff alleges that his future employment opportunities have been negatively affected by the reassignment. *See* Pl.'s Opp'n at 5. If facts uncovered by discovery support his claim, the plaintiff may have a case under *Brown* even if the defendant can show that the plaintiff's salary and benefits remained the same after the transfer.

In *Brown*, the D.C. Circuit found that a United States Export–Import Bank employee could not establish the adverse nature of her two lateral transfers unless she showed that they resulted in a loss in pay or benefits or negatively affected her future career opportunities. Her partiality for one position over another made no

difference since "[m]ere idiosyncrasies of personal preference are not sufficient to state an injury." *See id.* at 457. In the instant case, the plaintiff does not claim that his transfer was adverse simply because he preferred to stay in headquarters. Instead, he explicitly claims a loss of per diem compensation. *See* Pl.'s Opp'n at 22. He also claims that his promotional opportunities were diminished because agents are often transferred to regional offices for making mistakes. Thus, a presumption could arise that he was transferred for poor performance. *See id.* In addition, the plaintiff claims the work in the regional office is not as high profile and is more routine than the work in headquarters. *See id.*

The court holds that the plaintiff's involuntary transfer and its surrounding circumstances in this case could constitute an adverse personnel action under Title VII. Consequently, the court will deny the defendant's motion to dismiss.

### D. Equitable Tolling

■ Even if the court concluded that the transfer did not qualify as an adverse personnel action, the court would still deny the defendant's motion to dismiss on 12(b)(1) grounds because equitable tolling would apply. The requirement of filing a timely administrative complaint is "not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 392, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *see also Bowden,* 106 F.3d at 437. The court's power to toll the statute of limitations, however, "will be exercised only in extraordinary and carefully circumscribed instances." *Mondy v. Secretary of the Army,* 845 F.2d 1051, 1057 (D.C.Cir.1988). Thus, the plaintiff will not be afforded extra time to file without exercising due diligence, and the plaintiff's excuse must be more than a "garden variety claim of excusable neglect." *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990).

In *Jarrell v. United States Postal Service,* 753 F.2d 1088 (D.C.Cir.1985), the Court of Appeals held that agency misinformation is one of the exceptions to the rule that tolling should be applied narrowly. In *Jarrell,* the plaintiff's justifiable reliance on an EEO counselor's assurances was held to be an equitable consideration that could excuse his noncompliance with the filing requirement. *See id.* In this case, the plaintiff asserts that his reliance on Mr. Beauchamp's promises of an eventual promotion prevented him from recognizing a pattern of discrimination. He alleges that Mr. Beauchamp discouraged him from applying for promotions outside of the Washington, D.C. office and misled him into believing that the reason the Agency did not promote him was because it had another specific position in mind for him. *See* Pl.'s Opp'n at 3–4. The plaintiff claims that this reliance on Mr. Beauchamp's assurances prevented him from timely filing after the four missed promotions. *See id.*

Accepting the plaintiff's well-pled facts as true for the purposes of this motion, the court finds that this case resembles *Jarrell* in that the plaintiff missed administrative deadlines because he justifiably relied on affirmative agency misrepresentations. Accordingly, even if the plaintiff were deemed to have late-filed, equitable tolling would apply.

### E. Elements of Prima–Facie Case of Discrimination and Retaliation

In its motion to dismiss, the defendant also argues that the complaint fails to make out a prima-facie case of discrimination and retaliation. *See* Mot. to Dis. at 5. Specifically, the defendant relies on cases that are no longer good law to argue that, "[t]o make a case of either discrimination or retaliation, the plaintiff is required to demonstrate, among other things, that an *adverse personnel action* took place." *Id.* (citing *Mitchell v. Baldrige,* 759 F.2d 80,

84 (D.C.Cir.1985); *Douglas v. Pierce,* 707 F.Supp. 567 (D.D.C.1988)).

█ The D.C. Circuit has recently held, however, that a plaintiff is not required to set forth the prima-facie elements of a discrimination or retaliation case at the initial stage. In *Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111 (D.C.Cir.2000), the D.C. Circuit recognized that the *McDonnell Douglas* test for proving unlawful discrimination applies, and that the test's first prong places the burden of proof on the plaintiff to establish a prima-facie case of discrimination. The Circuit cautioned that "None of this, however, has to be accomplished in the complaint itself." *See id.*[1]

As this court has recently held, "[t]hese D.C. Circuit cases serve as a stark reminder that a cornerstone of the Federal Rules of Civil Procedure, and Rule 8 in particular, was to establish a regime of notice pleading rather than one of fact pleading." *Woodruff v. DiMario,* 197 F.R.D. 191, 194 (D.D.C.2000) (Urbina, J.) (citing *Atchinson v. D.C.,* 73 F.3d 418, 421 (D.C.Cir.1996)). In this case, the complaint contains a short and plain statement that gives the defendant fair notice of the facts underlying his claims. The plaintiff, therefore, has met the minimum pleading requirements for his discrimination and retaliation claims.

### F. Motion for Summary Judgment

Because the court denies the defendant's motion to dismiss and will allow discovery to proceed, the court will deny the defendant's motion for summary judgment as premature.

### IV. CONCLUSION

For all of these reasons, the court will deny the defendant's motion to dismiss and will deny without prejudice the defendant's motion for summary judgment. An Order directing the parties in a fashion consistent with this Memorandum Opinion is separately and contemporaneously issued this 22 day of February, 2001.

### *ORDER*

**DENYING THE DEFENDANT'S MOTION TO DISMISS; DENYING WITHOUT PREJUDICE THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

For the reasons stated in the court's Memorandum Opinion issued separately and contemporaneously this 22 day of February, 2001, it is

**ORDERED** that the defendant's motion to dismiss shall be and hereby is **DENIED;** and it is

**FURTHER ORDERED** that the defendant's motion for summary judgment shall be and hereby is **DENIED** without prejudice.

**SO ORDERED.**

---

1. The Supreme Court explained the *McDonnell Douglas* framework in *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981):

First, the plaintiff has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination. Second, if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.... The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.