William SANDERS, Plaintiff,

v.

Ann VENEMAN, Secretary, U.S. Department of Agriculture, Defendant.

Civil Action No. 00–1419(RMU).

United States District Court, District of Columbia.

May 14, 2002.

Gary T. Brown, Brown & Sherman, LLP, Washington, DC, for Plaintiff.

Claire M. Whitaker, Assistant United States Attorney, Washington, DC, for Defendant.

## *MEMORANDUM OPINION*

### DENYING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

URBINA, District Judge.

## I. INTRODUCTION

This matter comes before the court on the defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. William Sanders ("the plaintiff" or "Mr. Sanders") brings this suit for damages under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The plaintiff claims that his employer, the U.S. Department of Agriculture, discriminated against him on the basis of his race and retaliated against him after he complained of unlawful discrimination.

Specifically, the plaintiff alleges that his employer denied him promotions and reassigned him to a regional office, negatively affecting his career opportunities. Ann Veneman ("the defendant") is the Secretary of Agriculture, named in her official capacity.

On August 21, 2000, the defendant filed a motion to dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56. On February 22, 2001, this court held that the plaintiff had timely exhausted his administrative remedies and that the plaintiff's involuntary transfer could constitute an adverse personnel action within the meaning of Title VII. *Sanders v. Veneman*, 131 F.Supp.2d 225 (D.D.C.2001). The court also rejected the defendant's contention that the plaintiff had to establish his prima-facie cases of discrimination and retaliation in his complaint. *Id.* at 230–31. The court noted that the D.C. Circuit had recently made it clear that a plaintiff did not have to set forth a prima-facie case in the complaint. *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111 (D.C.Cir.2000).[1] Accordingly, the court denied the defendant's motion to dismiss and, consequently, denied the defendant's motion for summary judgment as premature. *Sanders*, 131 F.Supp.2d at 231.

Now that discovery has closed, the defendant moves for summary judgment on the plaintiff's discrimination and retaliation claims. For the reasons that follow, the court denies the defendant's motion for summary judgment and allows the plaintiff's claims to proceed to trial.

## II. BACKGROUND

An African–American man, Mr. Sanders works as a GS–13 Criminal Investigator in the Office of Inspector General ("OIG"), a division of the U.S. Department of Agriculture ("USDA"). Compl. ¶ 5. Between November 1995 and March 1996, Mr. Sanders applied for four GS–14 Criminal Investigator vacancies within the OIG. Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") at 4; Def.'s Mot. for Summ. J. ("Mot. for Summ. J.") at 2. He made the "best qualified" list for each promotion but did not receive any of them. *Id.* Instead, the defendant chose two white men, one African–American man, and one Hispanic man. Pl.'s Opp'n at 4; Mot. for Summ. J. at 3. The defendant announced the selection of one of the white men and the African–American man on January 16, 1996, and announced the other two selections on March 25, 1996. Mot. to Dismiss at 2.[2]

On May 26, 1996, the USDA notified Mr. Sanders that it would reassign him from the Washington, D.C. office to another GS–13 Criminal Investigator position in Riverdale, Maryland. Mot. for Summ. J.

1. Since the court issued its Memorandum Opinion on February 22, 2001, the Supreme Court has also addressed this issue. In *Swierkiewicz v. Sorema N.A.*, a unanimous Court overruled the Second Circuit and sided with circuits, such as the D.C. Circuit, in holding that a complaint need not allege facts to support a prima-facie case of discrimination in an employment-discrimination action. 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). The Court held that "[b]efore discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case

in a particular case. Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard ...." *Id.* 122 S.Ct. at 997–98.

2. Any references in this Memorandum Opinion to the motion to dismiss are to the defendant's motion to dismiss filed August 21, 2000. The plaintiff filed his opposition to this motion on October 3, 2000, and the defendant filed a reply on October 19, 2000.

at 3. Mr. Sanders viewed this involuntary transfer to an office outside of headquarters as a negative career move that would decrease his chances of receiving a promotion. Compl. ¶ 8. Moreover, he claims that he "also suffered financial harm as a result of the transfer in that his per diem pay was significantly reduced, which noticeably diminished his salary." Pl.'s Opp'n to Mot. to Dismiss at 4–5. Accordingly, on May 28, 1996, two days after he learned of his transfer, Mr. Sanders contacted an Equal Employment Opportunity ("EEO") counselor. *Id.* at 5.

Mr. Sanders asserts that Craig Beauchamp, the Assistant Inspector General, was both the selecting official for the four promotions and the official who authorized Mr. Sanders's transfer to the regional office. *Id.* at 3–4. Mr. Sanders claims that Mr. Beauchamp was aware of his involvement in a "coalition to address problems that confronted African–Americans" within the OIG. *Id.* at 3. On November 2, 1995, Mr. Sanders allegedly arranged and participated in a coalition meeting, the purpose of which was to discuss EEO problems in the office, including fewer promotional opportunities for African–Americans. Pl.'s Opp'n at 4. According to Mr. Sanders, Mr. Beauchamp attended this meeting. *Id.*

While Mr. Sanders was pursuing a promotion, Mr. Beauchamp allegedly assured him he would be promoted to Mr. Millard Reid's GS–14 position in the Washington office when Mr. Reid retired. Pl.'s Opp'n at 6. Mr. Sanders claims that this assurance prevented him from recognizing a pattern of discrimination in the promotion decisions. According to Mr. Sanders, he realized he was being discriminated against only when he received notice of his reassignment on May 26, 1996. Pl.'s Opp'n to Mot. to Dismiss at 3–4.

The defendant counters that the promotions were neither discriminatory nor retaliatory, and notes that an African–American man was chosen for one of the positions. Def.'s Reply to Pl.'s Opp'n to Mot. to Dismiss at 9. In addition, the defendant argues that any alleged conversations with Mr. Beauchamp "would simply not rise to the level of 'misrepresentations' by the agency." *Id.* at 5. The defendant contends that Mr. Sanders suffered no diminution in salary or benefits as a result of his transfer. In addition, the defendant states that a decrease in per diem expense pay does not qualify as a legitimate salary diminution. *Id.* at 10–11. Moreover, the defendant asserts that each of the GS–14 selectees had worked in a regional or field office before their promotions, thus belying Mr. Sanders's claim that his transfer negatively affected his chances for promotion. *Id.* Finally, because the possibility of relocation was one of the conditions of Mr. Sanders's position, the defendant argues that Mr. Sanders cannot consider his reassignment involuntary. Mot. to Dismiss at 2–3.

Mr. Sanders visited an EEO counselor for the first time on May 18, 1996. Mot. to Dismiss at 3; Pl.'s Opp'n to Mot. to Dismiss at 5. On July 20, 1999, the EEOC issued a decision ruling that Mr. Sanders had satisfied the necessary procedural requirements for an administrative hearing. Pl.'s Opp'n to Mot. to Dismiss at 6. The EEOC issued its Final Agency Decision on March 17, 2000, holding that Mr. Sanders had met the procedural prerequisites for a hearing. *Id.* The EEOC also determined that Mr. Sanders's transfer and non-selections for the promotion were based on legitimate, non-discriminatory reasons. Mot. to Dismiss at 3.

The USDA adopted and incorporated the EEOC's decision. Pl.'s Opp'n to Mot. to Dismiss at 6. Mr. Sanders brought suit

in this court on June 15, 2000, within 90 days of the EEOC's final decision, as required by 42 U.S.C. § 2000e–16(c) and 29 C.F.R. § 1614.408. On August 21, 2000, the defendant filed a motion to dismiss, which the court subsequently denied. *Sanders,* 131 F.Supp.2d 225.

Now that discovery has closed, the defendant asserts that there is no evidence in the record that any of its actions were motivated by Mr. Sanders' race or his participation in protected EEO activity. Mot. for Summ. J. at 1. According to the defendant, Mr. Sanders's discrimination claims are based only on his personal beliefs that he was more qualified than his co-workers and that the defendant transferred him to reduce his chances for promotion. *Id.* at 1–2. The defendant argues that these subjective beliefs are insufficient to create a genuine issue of material fact and, as such, Mr. Sanders cannot make out a prima-facie case of racial discrimination or retaliation under Title VII. *Id.* at 2, 8, 16; FED. R. CIV. P. 56(c). The court disagrees, and denies the defendant's motion for summary judgment on both counts.

## III. ANALYSIS

### A. Legal Standard for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood,* 43 F.3d 1538, 1540 (D.C.Cir.1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.[3] *Id.* at 252, 106 S.Ct. 2505. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton,* 164 F.3d 671, 675 (D.C.Cir.1999); *Harding v. Gray,* 9 F.3d 150, 154 (D.C.Cir.1993). Rather,

---

**3.** As directed by the D.C. Circuit, the court hereby invokes the requirements of Local Civil Rule 56.1, which states that each motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, including references to the relevant

parts of the record, and that an opposition to such a motion shall be accompanied by a statement listing all material facts as to which the opposing party contends there is a genuine issue, including references to the relevant parts of the record. LCvR 56.1; *Burke v. Gould,* 286 F.3d 513, 517–20 (D.C.Cir.2002).

the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene,* 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted). Finally, the D.C. Circuit has directed that because it is difficult for a plaintiff to establish proof of discrimination, the court should view summary-judgment motions in such cases with special caution. *Aka v. Washington Hosp. Ctr.,* 116 F.3d 876, 879–80 (D.C.Cir.1997); *see also Johnson v. Digital Equip. Corp.,* 836 F.Supp. 14, 18 (D.D.C.1993).

## B. The *McDonnell Douglas* Framework

To prevail on a claim of race discrimination under Title VII, a plaintiff must follow a three-part burden-shifting analysis. *McDonnell Douglas v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The Supreme Court explained this scheme as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination. Second, if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination .... The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (quoting *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817 (citations omitted)).

Thus, the plaintiff must first establish a prima-facie case of prohibited discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Aka v. Washington Hosp. Ctr.,* 156 F.3d 1284, 1288 (D.C.Cir.1998) (en banc); *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 140–43, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The plaintiff need not, however, establish a prima-facie case in the complaint. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). As a general matter, a prima-facie case of discriminatory denial of promotion based on race consists of the following elements: (1) the plaintiff is a member of a protected class; (2) the plaintiff applied for and was qualified for the position at issue; (3) despite the plaintiff's qualifications, the defendant rejected the plaintiff; and (4) the position was filled by a similarly qualified employee from outside the protected class. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Bundy v. Jackson,* 641 F.2d 934, 951 (D.C.Cir.1981).

To demonstrate a prima-facie case of retaliation, the plaintiff must establish the following elements: (1) the plaintiff was engaged in protected activity; (2) the employer took an adverse personnel action against her; and (3) there is a causal link between the adverse action and the protected activity. *Jones v. Washington Metro. Area Transit Auth.,* 205 F.3d 428, 433 (D.C.Cir.2000).

The plaintiff has the burden of proving the prima-facie case by a preponderance of the evidence. *Burdine,* 450 U.S. at 252–53, 101 S.Ct. 1089. "The burden of establishing a prima facie case of disparate treatment is not onerous." *Id.* at 253, 101 S.Ct. 1089. By proving a prima-facie case, the plaintiff has established "a legally

mandatory, rebuttable presumption." *Id.* at 254 n. 7, 101 S.Ct. 1089. Accordingly, if at trial, the trier of fact believes the plaintiff's evidence and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case. *Id.* at 254, 101 S.Ct. 1089. In addition, once a plaintiff can demonstrate that she has met objective employment qualifications, the plaintiff has established her prima-facie case. *Accord Medina v. Ramsey Steel Co.,* 238 F.3d 674, 681 (5th Cir.2001) (stating that while courts should consider objective qualifications at the first step of the *McDonnell Douglas* framework, courts should consider subjective criteria only at the second and third steps of the analysis to avoid collapsing the entire analysis into a single initial step); *Jayasinghe v. Bethlehem Steel Corp.,* 760 F.2d 132, 135 (7th Cir.1985) (same); *Burrus v. United Tel. Co.,* 683 F.2d 339, 342 (10th Cir.1982) (same); *Lynn v. Regents of the Univ. of California,* 656 F.2d 1337, 1344 (9th Cir. 1981) (same); *Walker v. Mortham,* 158 F.3d 1177, 1192–93 (11th Cir.1998) (holding that while a plaintiff may need to address relative qualifications between job applicants if the defendant presents them to rebut the plaintiff's presumption of discrimination, the plaintiff need not introduce evidence regarding relative qualifications to prove her prima-facie case).

If the plaintiff succeeds in making a prima-facie case, the burden shifts to the employer to articulate a non-discriminatory reason for its action. The employer's burden, however, is merely one of production. *Burdine,* 450 U.S. at 254–55, 101 S.Ct. 1089. The employer "need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* If the employer is successful, the burden shifts back to the plaintiff to show that the defendant's proffered reasons are pretextual and that unlawful discrimination was the real reason for the action. *McDonnell Douglas,* 411 U.S. at 802–05, 93 S.Ct. 1817; *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 508, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

The defendant's explanation of its legitimate reasons must be "clear and reasonably specific" so that the plaintiff is "afforded a full and fair opportunity to demonstrate pretext." *Burdine,* 450 U.S. at 258, 101 S.Ct. 1089 (citation omitted). The defendant must articulate a clear and reasonably specific factual basis for its subjective reason to be legally sufficient, legitimate, and nondiscriminatory. *Id.* As the Eleventh Circuit has explained:

> [I]t might not be sufficient for a defendant employer to say it did not hire the plaintiff applicant simply because "I did not like his appearance" with no further explanation. However, if the defendant employer said, "I did not like his appearance because his hair was uncombed and he had dandruff all over his shoulders," or ... "because he came to the interview wearing short pants and a T-shirt," the defendant would have articulated a "clear and reasonably specific" basis for its subjective opinion—the applicant's bad (in the employer's view) appearance. That subjective reason would therefore be a legally sufficient, legitimate, nondiscriminatory reason for not hiring the plaintiff applicant.

*Chapman v. AI Transport,* 229 F.3d 1012, 1034 (11th Cir.2000) (*en banc*).

Once the defendant carries its burden of articulating a "legitimate, nondiscriminatory reason" for the employee's rejection, the plaintiff must then have an opportunity to prove to the fact finder by a prepon-

derance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but rather were a pretext for discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. "That is, the plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence' " and that the plaintiff's membership in a protected class was the true reason for the employment action. *Reeves,* 530 U.S. at 142–44, 120 S.Ct. 2097 (quoting *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089); *see also Aka,* 156 F.3d at 1290; *Mungin v. Katten Muchin & Zavis,* 116 F.3d 1549, 1554 (D.C.Cir.1997).

Both the Supreme Court and the D.C. Circuit have held that the burden-shifting scheme becomes irrelevant once both parties have met the burdens discussed earlier. *Reeves,* 530 U.S. at 142–44, 120 S.Ct. 2097; *Aka,* 156 F.3d at 1289. At that point, the relevant inquiry is whether there is sufficient evidence from which a reasonable fact finder could find in favor of the plaintiff, although "the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom ... on the issue of whether the defendant's explanation is pretextual." *Reeves,* 530 U.S. at 142–144, 120 S.Ct. 2097 (citing *Burdine,* 450 U.S at 255 n. 10, 101 S.Ct. 1089); *see also Aka,* 156 F.3d at 1290; *Mungin,* 116 F.3d at 1554.

The D.C. Circuit has ruled that simply casting doubt on the employer's proffered justification does not automatically enable the plaintiff to survive summary judgment. *Aka,* 156 F.3d at 1290–94. Rather, "the plaintiff's attack on the employer's explanation must always be assessed in light of

the total circumstances of the case.". *Id.* at 1291.

In short, once an employer has met its burden of advancing a nondiscriminatory reason for its actions, the focus of proceedings at summary judgment:

> will be on whether the jury could infer discrimination from the combination of (1) the plaintiff's *prima facie* case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer) or any contrary evidence that may be available to the employer (such as evidence of a strong track record in equal opportunity employment).

*Id.* at 1289. But the plaintiff need not present evidence "in each of these categories in order to avoid summary judgment." *Id.* Indeed, the D.C. Circuit interprets Supreme Court precedent to mean that, in some cases, a plaintiff who presents a *prima facie* case that "strongly suggests intentional discrimination may be enough by itself to survive summary judgment." *Id.* n. 4 (citing *Burdine,* 450 U.S. at 255 n. 10, 101 S.Ct. 1089).

Applying these legal standards to the instant case, the court denies the defendant's motion for summary judgment.

## C. The Plaintiff Can Proceed on His Racial–Discrimination Claims

The defendant argues in its motion for summary judgment that the plaintiff has not established a prima-facie case of racial discrimination. Mot. for Summ. J. at 8. The court rejects this contention.[4]

---

4. The court notes that the defendant properly stated in its motion for summary judgment that in the February 22, 2001 Memorandum

Opinion, "the Court found that Mr. Sanders had established a *prima facie* case of discrimination and retaliation." Mot. for Summ. J. at

The plaintiff submits that the defendant discriminated against him on the basis of race when it denied him three promotions [5] to Criminal Investigator positions and a fourth promotion to replace Mr. Reid as head of the Secretary's security detail.[6] Pl.'s Opp'n to Mot. for Summ. J. ("Pl.'s Opp'n") at 2. The plaintiff claims that despite his qualifications and the number of years he served as a Criminal Investigator at the USDA, the defendant repeatedly denied him a promotion to a GS–14 position. *Id.* at 17.

■ The plaintiff has established a prima-facie case of racial discrimination. As an African–American, he is a member of a protected class. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. Because no party disputes that the plaintiff made the "best qualified" list for each of the positions he applied for, the plaintiff and the other candidates were similarly situated.

*Woodruff v. Dimario,* 164 F.Supp.2d 1, 8 (D.D.C.2001) (Urbina, J.); Mot. for Summ. J. at 2, 9; Pl.'s Opp'n at 15. Next, the defendant rejected the plaintiff for each promotion. Pl.'s Opp'n at 17. Finally, the defendant filled each of the three positions with a similarly situated employee who was not a member of the protected class. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; Mot. for Summ. J. at 2; Pl.'s Opp'n at 17.

In addition, courts that have addressed the issue agree that if a plaintiff can show that he met objective employment qualifications—which this plaintiff has by making the "best qualified" list for each of the three positions he applied for—then the plaintiff has established his prima-facie case. *Accord Medina,* 238 F.3d at 681 (stating that while courts should consider objective qualifications at the first step of the *McDonnell Douglas* framework, courts

8 n. 4 (citing Mem. Op. at 2). While the court's actual ruling on this point was only that the plaintiff's complaint "has met the minimum pleading requirements for his discrimination and retaliation claims," Memorandum Opinion at 11, the court clarifies that it misstated its ruling on page two of the February 22, 2001 Memorandum Opinion when it said the plaintiff "had established prima-facie cases of discrimination and retaliation." Mem. Op. at 2. For the record, then, the court did not rule that the plaintiff established prima-facie cases of discrimination and retaliation in its February 22, 2001 Memorandum Opinion but does so rule in the instant Memorandum Opinion.

5. In his opposition, the plaintiff withdraws an additional claim of non-selection for the Criminal Investigator position filled by selectee, Jerome Byers, who is African–American. Pl.'s Opp'n at 4, 12 n. 3.

6. The defendant contends that the court should not allow the plaintiff to proceed on his claim of non-promotion to Mr. Reid's position since, according to the defendant, the plaintiff only raises the claim for the first time in his opposition to the defendant's motion for

summary judgment and never raised the claim in his formal administrative complaint. Def.'s Reply ("Reply") at 7–9, n. 2. The defendant also maintains that the plaintiff never applied for Mr. Reid's position. *Id.* Because the defendant understandably could only raise this point in its reply, the court has not yet heard the plaintiff's views on these issues.

The court thus directs the parties to confer on this point within seven business days from the date of this Memorandum Opinion and order ("date of issue") and for the plaintiff to clarify to the defendant if he is seeking to press forward with a claim of non-promotion for Mr. Reid's position. If the plaintiff does not wish to pursue such a claim, the plaintiff shall file a notice with the court within 10 business days from the date of issue. If the plaintiff does wish to pursue such a claim, the plaintiff shall file a brief that shall not exceed five pages by June 10, 2002 responding to the points the defendant makes in its reply brief. The defendant shall then have until July 1, 2002 to file a responsive brief that shall not exceed five pages. In sum, the court's ruling in this Memorandum Opinion and order does not pertain to the plaintiff's possible claim of non-selection for Mr. Reid's position.

should consider subjective criteria only at the second and third steps of the analysis to avoid collapsing the entire analysis into a single initial step); *Jayasinghe,* 760 F.2d at 135; *Burrus,* 683 F.2d at 342; *Lynn,* 656 F.2d at 1344; *Walker v. Mortham,* 158 F.3d 1177, 1192–93 (11th Cir.1998) (holding that while a plaintiff may need to address relative qualifications between job applicants if the defendant presents them to rebut the plaintiff's presumption of discrimination, the plaintiff need not introduce evidence regarding relative qualifications to prove her prima-facie case). This court agrees with the reasoning undergirding these cases and concludes that the plaintiff has established a prima-facie case of racial discrimination by a preponderance of the evidence.[7] *Burdine,* 450 U.S. at 252–53, 101 S.Ct. 1089.

■ Continuing with the *McDonnell Douglas* framework, the court determines that the defendant has satisfied its burden of production by offering a legitimate, non-discriminatory reason for not promoting the plaintiff to a GS–14 position. *Burdine,* 450 U.S. at 254–55, 101 S.Ct. 1089. The defendant maintains that the plaintiff did not compete well against the other candidates. Mot. for Summ. J. at 9. According to the defendant, the plaintiff's primary duties for his current GS–13 position consisted of providing personal protection to the Secretary and Deputy Secretary of Agriculture, whereas the GS–14 positions the plaintiff applied for did not involve security.[8] *Id.*

The defendant further argues that if the plaintiff had certain experience that could have demonstrated his ability to perform at the GS–14 level, he should have described it in his applications. *Id.* at 9–10. The plaintiff acknowledges that he failed to include all of his investigative experience in his applications. *Id.* at 10 n. 6, Ex. 1 (Sanders Dep. at 223). As a result, the USDA maintains that it could not look beyond the plaintiff's applications in making its selections. *Id.* at 10 n. 6.

■ The plaintiff responds by arguing that he has presented sufficient evidence to cast doubt on whether the USDA's proffered reasons for its decisions not to promote him were pretextual. In his opposition, the plaintiff maintains that there are material facts in dispute that should be tried before a jury. Pl.'s Opp'n at 17–30. Specifically, the plaintiff argues that on at least six separate occasions, Mr. Beauchamp told him that he was the best qualified candidate to replace Mr. Reid, and that if he left headquarters for a field position he would be less suited for promotion to Mr. Reid's GS–14 position.[9] *Id.* at 6. Mr. Beauchamp cannot recall this conversation with the plaintiff. Mot. for Summ. J. Ex. 20. The court deems this a

---

7. In its reply, the defendant states that the plaintiff has failed to "establish a *prima facie* case of race or age discrimination . . . ." Reply at 18. Since the complaint never alleges that the plaintiff suffered age discrimination and since the record is devoid of any reference to an age-discrimination claim, the court reads this sentence as a mistake on the defendant's part.

8. The defendant states that the three positions at issue dealt with "formulating investigative policy, providing investigative training, providing expert guidance to field staff on investigative matters, as well as reviewing investi-

gative reports and preparing correspondence regarding a wide range of investigatory matters." Mot. for Summ. J. at 9.

9. As noted previously, although the court will not consider the plaintiff's possible claim for non-selection to Mr. Reid's position in the instant Memorandum Opinion, the court deems Mr. Beauchamp's alleged statements material since Mr. Beauchamp's credibility and his conduct as the plaintiff's supervisor are directly relevant to the plaintiff's claims of racial discrimination and retaliation.

genuine issue of material fact in dispute. *See* FED. R. CIV. P. 56(c).

Next, the plaintiff charges that Mr. Beauchamp deliberately ignored additional information that he knew about the plaintiff's experience to reduce the plaintiff's chances in the selection process. Pl.'s Opp'n at 18. Specifically, the plaintiff contends that while Mr. Beauchamp did take this additional, possibly helpful information into account for other candidates, Mr. Beauchamp deliberately failed to do so for the plaintiff. *Id.* at 19–20. Indeed, the defendant herself seems to contradict Mr. Beauchamp on this point. On the one hand, the defendant states in its motion for summary judgment that "Mr. Beauchamp could not look beyond the applications in making his selections." Mot. for Summ. J. at 10 n. 6. Conversely, however, both Mr. Beauchamp and a Human Resources official state that selecting officials *do consider* this type of information in the promotion process. Mr. Beauchamp testified that he did factor in information about candidates not contained in the applications in making his decisions. Pl.'s Opp'n at 19–20 (citing Mot. for Summ. J. Ex. 20 (Beauchamp Dep. at 47–48)). In addition, Marie Harte, Director of Human Resources for the Management Division of the OIG, testified that "[a] selecting official may base their [sic] decision on personal knowledge that only speaks to the job-related qualifications of the person." Mot. for Summ. J. Ex. 19. Accordingly, the plaintiff asserts that Mr. Beauchamp's decision to consider only his application materials while he allegedly looked beyond the applications of other candidates raises an inference of pretext. Pl.'s Opp'n at 22. The court agrees with the plaintiff that the inconsistent positions taken by the defendant and the defendant's own representatives raise significant questions.

In addition, the plaintiff asserts that he was more qualified than the agents selected for the positions at issue. *Id.* at 25. While the defendant has never disciplined the plaintiff for engaging in improper behavior, the defendant had suspended one of the selectees, John Ogas, for "conduct unbecoming a supervisor." *Id.* at 27. The recommending official, Edward Howard, also strongly opposed another selectee, Louis Huttenback. *Id.* at 29. Moreover, a strong point weighing in the plaintiff's favor is that Mr. Howard himself testified that during the selection process, Mr. Beauchamp rarely consulted the other managers and that there "had been frequent complaining about the lack of input on [the manager's] part as far as positions getting filled within the organization." *Id.* at 30. Mr. Beauchamp himself admits that when Mr. Reid was getting ready to retire, Mr. Reid told Mr. Beauchamp that in his view, "Bill Sanders would be a good candidate, his recommended candidate to replace him." Mot. for Summ. J. Ex. 20 (Beauchamp Dep. at 194). This admission by Mr. Beauchamp is significant because it could allow the trier of fact to call into question Mr. Beauchamp's explanations for the non-selections of the plaintiff despite the fact that other officials within the USDA thought highly of the plaintiff. *Aka*, 156 F.3d at 1289.

In short, the fact that successful applicants such as Mr. Ogas and Mr. Huttenback had been disciplined and had been opposed by the recommending official respectively, and the fact that other managers had apparently complained about Mr. Beauchamp combine to raise serious questions about Mr. Beauchamps's decisions not to promote the plaintiff. *Id.* Based on all the evidence, the court concludes that the plaintiff has presented enough evidence to allow a reasonable jury to infer that he suffered racial discrimination when

the defendant promoted the other candidates instead of him. *Id.*

### D. The Plaintiff Can Proceed on His Retaliation Claims

Next, the defendant argues in its motion for summary judgment that the plaintiff has not established a prima-facie case of retaliation. Mot. for Summ. J. at 8. The court disagrees.

■ To establish a prima-facie case of retaliation the plaintiff must demonstrate that: (1) he engaged in protected activity; (2) the employer took an adverse personnel action against him; and (3) there is a causal link between the adverse action and the protected activity. *Jones,* 205 F.3d at 433. The court concludes that the plaintiff participated in a protected activity on at least two occasions. His involvement in the formation of an African–American coalition in November 1995 and his filing of an EEO complaint in May 1996 constitute protected activities. *Woodruff,* 164 F.Supp.2d at 9.

The second element of the prima-facie case requires the plaintiff to show that the defendant took an adverse personnel action against him. *Jones,* 205 F.3d at 433. The plaintiff asserts that both his denials of promotions and the defendant's involuntary transfer of the plaintiff to the regional office constitute adverse employment actions. Pl.'s Opp'n at 37. Because the denials of promotions qualify as adverse employment actions, the court need not address the issue of whether the involuntary reassignment amounts to an adverse personnel action. Indeed, even the defendant acknowledges that both the Supreme Court and the D.C. Circuit have held that a denial of promotion constitutes an adverse employment action that involves a tangible effect on the plaintiff's employment. Mot. for Summ. J. at 11–12 (quoting *Brown,* 199 F.3d at 456 (quoting *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998))).

■ Finally, the plaintiff must show a causal connection between the adverse action and the protected activity. *Jones,* 205 F.3d at 433. The plaintiff must make a prima-facie case showing that the adverse action would not have occurred "but for" his participation in the protected activity. *Gregg v. Hay–Adams Hotel,* 942 F.Supp. 1, 8 (D.D.C.1996). The more time that passes between the protected activity and the alleged act of retaliation, the more difficult it is to infer a causal connection between the two. *Lockamy v. Truesdale,* 182 F.Supp.2d 26 (D.D.C.2001). Courts have held that a sufficiently great lapse of time, for example, two years, warrants judgment for the defendant as a matter of law on a retaliation claim. *Clark v. Chrysler Corp.,* 673 F.2d 921, 930 (7th Cir.1982).

In this case, however, within a five-month period following the plaintiff's participation in the coalition, the defendant began denying the plaintiff the first of several promotions and on March 26, 1996, transferred the plaintiff to the regional office. Pl.'s Opp'n at 37. The court determines that the close proximity in time between the plaintiff's participation in protected activity and the defendant's allegedly adverse action is sufficient to establish a causal connection. *Cf. Saunders v. DiMario,* 1998 WL 525798 *4, *5 (D.D.C. 1998) (reasoning that the plaintiff failed to establish the causal nexus necessary for a retaliation claim when the allegedly retaliatory non-hiring occurred eight to ten years after his filing of an EEO complaint); *Townsend v. Washington Metro. Area Transit Auth.,* 746 F.Supp. 178, 187 (D.D.C.1990) (holding that a lapse of two years between the filing of an EEO charge and the alleged retaliatory action can negate an inference of retaliatory motive).

■ Once the court concludes that the plaintiff has established a prima-facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. The defendant has satisfied its burden of production by offering a legitimate, non-discriminatory reason for transferring the plaintiff to the regional office. The defendant avers that it routinely reassigns GS–13 through GS–15 agents to Head-quarters and the regional office for "operational, staffing, and career development reasons." Mot. for Summ. J. at 24, Ex. 18. According to the defendant, one of the conditions of employment for all OIG GS–13 Criminal Investigators is that they may be required to relocate. *Id.* at 15.

■ While the defendant's explanation for the plaintiff's transfer is plausible and may ultimately be credible to a jury, the court concludes that the plaintiff has presented sufficient evidence to show that the defendant's proffered reasons for the transfer are pretextual. The plaintiff claims that after his transfer he began to receive lower performance evaluations. Pl.'s Opp'n at 34. According to the plaintiff, he received a "fully successful" rating in his first performance appraisal at the regional office. Mot. for Summ. J. Ex. 1. This rating was lower than the "outstanding" and "superior" ratings he received while at Headquarters. *Id.* The plaintiff alleges that when the defendant transfers an agent from Headquarters to a regional office, other employees assume that the transfer was for performance reasons. Pl.'s Opp'n at 34. The plaintiff argues that the transfer, therefore, put him at a great disadvantage by affecting his reputation and diminishing his chances for promotion. *Id.*

The plaintiff also asserts that the defendant continued to retaliate against him after he filed his EEO complaint in May 1996 by denying him other promotions to the GS–14 level. *Id.* at 37. The plaintiff points out that one of the concerns the Coalition addressed was that Coalition participants might suffer reprisal, for example "case assignments in remote locations for extended periods of time." *Id.* at 5.

The plaintiff has presented enough evidence to allow a reasonable jury to infer a retaliatory motive on the defendant's part when it denied the plaintiff promotions and transferred him to the regional office shortly after he participated in Coalition activities. While the plaintiff has not submitted a "smoking gun" deposition to support his retaliation claims, this will often be next to impossible for a Title VII plaintiff to do. For this reason, the court determines that a jury must weigh the credibility of the plaintiff's claims. The plaintiff has presented enough evidence to demonstrate to the court that material facts remain in dispute. *Aka*, 156 F.3d at 1289. Accordingly, the plaintiff's retaliation claims can proceed to trial.

## IV.  CONCLUSION

For all these reasons, the court denies the defendant's motion for summary judgment. An order directing the parties in a fashion consistent with this Memorandum Opinion is separately and contemporaneously issued this 13 day of May, 2002.

### *ORDER*

DENYING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

For the reasons stated in this court's Memorandum Opinion separately and contemporaneously issued this 13 day of May, 2002, it is

**ORDERED** that the defendant's motion for summary judgment is **DENIED;** and it is **FURTHER ORDERED** that the parties shall confer on the point raised in

footnote 4 of the accompanying Memorandum Opinion within seven business days from the date of this Memorandum Opinion and order ("date of issue") and for the plaintiff to clarify to the defendant if he is seeking to press forward with a claim of non-promotion for Mr. Reid's position. If the plaintiff does not wish to pursue such a claim, the plaintiff shall file a notice with the court within 10 business days from the date of issue. If the plaintiff does wish to pursue such a claim, the plaintiff shall file a brief that shall not exceed five pages by June 10, 2002 responding to the points the defendant makes in its reply brief. The defendant shall then have until July 1, 2002 to file a responsive brief that shall not exceed five pages.